J. A11018/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  EDWARD S. DELGROS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF:  EDWARD S. DELGROS, | : | |
| | : | No. 349 WDA 2013 |
| Appellant | : | |

Appeal from the Order, February 1, 2013,
in the Court of Common Pleas of Mercer County
Civil Division at No. 2012-3455

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED OCTOBER 03, 2014**

Appellant appeals from the order denying his petition to expunge his mental health records pursuant to 18 Pa.C.S.A. § 6111.1(g)(2) and to restore his right to possess a firearm under 18 Pa.C.S.A. § 6105(f)(1). Finding no reversible error below, we affirm, but we will remand this matter to the trial court to enter an order sealing the record in this case.

In May and June of 1997, two separate involuntary commitments under Section 7302 of the Mental Health Procedures Act ("MHPA") were sought against appellant. The May commitment was sought by appellant's father. (Notes of testimony, 2/1/13 at 58.) The allegations included that appellant thought people "were out to get him," that he was making threats to people, and that he had lost his job because of this problem. (*Id.*) A medical professional who evaluated appellant found that he had hallucinations, psychosis, and depression, concluding that appellant required

in-hospital evaluation and treatment, and further that appellant was severely mentally disabled. (*Id.*) There was no averment that appellant had demonstrated within the last 30 days that he was a danger to himself or others.

The June commitment was sought by appellant's ex-wife and her husband. The allegations included that on June 17, 1997, appellant threatened to kill his ex-wife and her husband and take custody of his children. (*Id.* at 59.) Appellant menacingly drove his vehicle into the path of the husband's vehicle and then chased him for a mile. (*Id.*) A medical professional examined appellant and noted well-documented recent episodes of severe psychosis and violent behavior. (*Id.* at 60.) The professional concluded that appellant was severely mentally disabled and in need of involuntary commitment. (*Id.*)

On November 6, 2012, appellant filed his petition to expunge his records and restore his right to possess a firearm. A hearing was held on February 1, 2013. The only evidence presented by appellant was his own testimony. An attorney for the Pennsylvania State Police entered certified copies of appellant's May and June 1997 petitions for commitment into evidence and then read into the record the allegations contained therein. Thereafter, the court found that the May commitment was not supported by sufficient evidence and ordered that record expunged. However, the court found that the June commitment was supported by sufficient evidence and

denied expunction. The court further found that appellant had failed to show that he could possess a firearm without risk to himself or others, specifically noting that appellant failed to produce any mental health testimony. Finally, the trial court denied appellant's request to keep the record in this case under seal. This timely appeal followed.

We may summarize appellant's issues on appeal as follows:

1. Appellant was denied due process when he was involuntarily committed on June 19, 1997.[1]

2. The trial court erred in finding the allegations of the June 1997 commitment to be sufficient and denying expunction.

3. The trial court erred in requiring appellant to present expert medical testimony in order to demonstrate that he was not a risk to himself or others in order to have his right to possess a firearm restored.

4. The trial court erred in relying on or taking judicial notice of evidence in other cases involving appellant.

5. The trial court erred in failing to seal the record.

---

[1] This is the due process claim that was raised in appellant's Statement Of Matters Complained Of, and is the claim that was analyzed by the trial court. Appellant raises additional due process issues on appeal, contending that the interplay of various statutes resulted in a due process violation and arguing that 50 P.S. § 7302 and 18 Pa.C.S.A. § 6111.1(g)(2) violate due process by failing to provide a meaningful post-determination *de novo* review of the decision to commit. These issues were not raised in appellant's Statement Of Matters Complained Of, nor were they addressed by the trial court, and are being improperly raised for the first time on appeal. Matters raised for the first time on appeal are waived. Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. We also note that appellant raised no constitutional issues in his original petition.

We will address these issues *seriatim*.

Appellant first claims that during his involuntary commitment on June 19, 1997, he was denied due process of law. Simply stated, this issue has been previously decided. While this court has acknowledged that procedure under 50 P.S. § 7302 provides minimal constitutional due process protection, we have found "it is nevertheless constitutionally sound in light of the therapeutic/non-punitive intent and short duration of the Section 302 procedures." *In re F.C., III*, 966 A.2d 1131, 1136-1137 (Pa.Super. 2009), *affirmed*, 2 A.3d 1201 (Pa. 2010). There is no error here.

Appellant next argues that the trial court erred in finding the allegations of the June 1997 commitment petition to be sufficient and denying expunction. "Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." *In re Keyes*, 83 A.3d 1016, 1022 (Pa.Super. 2013). Expunction of mental health records is provided for as follows:

> (2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the

> 60-day period set forth under section 6105(a)(2).

18 Pa.C.S.A. § 6111.1(g)(2). Thus, unless there was sufficient evidence to support a commitment, the record must be expunged.

In order to be involuntarily committed, the patient must be examined by a physician and found to be severely mentally disabled and in need of immediate treatment. 50 P.S. § 7302(b). Severe mental disability is demonstrated where the patient exhibits a clear and present danger to himself or others. 50 P.S. § 7301(a). A clear and present danger to others is shown where the patient, within the last 30 days, has inflicted or attempted to inflict serious bodily injury against another, and there is a reasonable probability that such conduct will be repeated. 50 P.S. § 7301(b)(1). A clear and present danger to self is shown where the patient has acted in such manner as to evidence that he would be unable, without care, supervision, and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury, or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded, or where suicide or substantial mutilation have been attempted. 50 P.S. § 7301(b)(2).

Instantly, the averments underlying appellant's June 1997 commitment were read into the record. They indicated that on June 17, 1997, appellant threatened to kill his ex-wife and her husband and drove his

vehicle into the path of the husband's vehicle. This merited a finding that within the last 30 days prior to the commitment, appellant attempted to cause serious bodily injury both to himself and another. Moreover, the allegations stated that there were well-documented recent episodes of severe psychosis and violent behavior. This justified a finding that appellant's dangerous behavior had a reasonable probability to be repeated. Coupled with the physician's finding that he was severely mentally disabled and in need of involuntary commitment, the evidence was clearly sufficient to support the commitment.

Appellant argues that there should have been some sort of assessment by the trial court as to the reliability of the accusation against him and an evaluation of the reliability of the physician's diagnosis. We disagree. Such concerns go to the weight of the evidence and not its sufficiency. The statute directs the court to assess the sufficiency of the evidence and not its weight. As it stands, there was sufficient evidence to support the June 1997 commitment, and the court below properly did not expunge the record.[2]

In his third issue, appellant argues that the trial court erred in requiring appellant to present expert medical testimony in order to demonstrate that he was not a risk to himself or others in order to have his

---

[2] We also agree with the trial court's expunction of the record of the May 1997 commitment. There was no allegation that within the last 30 days of that commitment appellant attempted to inflict serious bodily injury on himself or others.

right to possess a firearm restored. Appellant argues that the statute does not require expert medical testimony:

> (1) Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

18 Pa.C.S.A. § 6105(f)(1).

While the statute does not require expert medical testimony, it plainly leaves the decision whether to restore the right to possess a firearm to the discretion of the trial court. Here, all appellant presented at the hearing on this matter was his own self-serving testimony. We find no abuse of discretion with the trial court finding that appellant failed to establish that he could possess a firearm without risk to himself or others based upon his testimony alone. Further, we also find no abuse of discretion in the court requiring medical evidence, even expert medical testimony, in order for appellant to prove that he could possess a firearm without risk to himself or others. This seems a prudent step before restoring the right to possess firearms to persons who have previously been diagnosed with such severe mental disability that they had to be involuntarily committed. There is no error here.

In his fourth issue, appellant contends that the trial court erred in relying on or taking judicial notice of evidence in other cases involving

appellant. Specifically, in denying appellant's petition, the trial court made reference to a case involving an injunction sought by appellant's former employer which the court had also presided over. (Notes of testimony, 2/1/13 at 69; **see also** Order, 2/1/13 at 2.) In its ensuing opinion, the trial court took judicial notice of the hearing on the injunction, as well as a criminal trial for appellant in 1999, which the trial court also presided over. (Trial court opinion, 4/8/13 at 5.) The court was referring to evidence adduced at that time that appellant had "human targets" in his basement that he used for target practice. (Notes of testimony, 2/1/13 at 67.)

We agree with appellant that it was error for the trial court to consider or take judicial notice of evidence adduced in other cases, including previous cases presided over by the court itself.

> A court is bound to decide the case before it based upon the evidence presented to it by the parties; it has no authority to seek out additional testimony in the records of unrelated cases on the matters at issue before it. This Court, in a case involving a claim of res judicata, noted that "a court may not ordinarily take judicial notice in one case of the records in another case even though the case arose in the same court and the contents of those records are known to the court." **Callery v. Municipal Authority of Township of Blythe**, 432 Pa. 307, 309, 243 A.2d 385, 386 (1968). **A fortiori**, a court may not base a decision upon evidence of record in another unrelated case.

**Commonwealth v. DePasquale**, 501 A.2d 626, 630, n.4 (Pa. 1985).

Nonetheless, we perceive no reversible error as there was no prejudice to appellant. To achieve expunction of his mental health records, appellant

had to show that the evidence was insufficient to justify commitment. The human target evidence considered by the court had no relevance whatsoever to whether the evidence justifying commitment was sufficient. The evidence supporting the commitment was shown to be sufficient by wholly independent evidence. To achieve restoration of his right to possess firearms, appellant had to show that his possession of firearms did not present a risk to himself or others. Again, the human target evidence had no relevance to the weight of evidence appellant put forward at his hearing. The trial court denied restoration because appellant failed to present medical evidence that he no longer presented a risk. The human target evidence was not used to negate medical evidence that appellant no longer presented a risk to himself or others. We see no prejudice to appellant in this regard and no reversible error.

In his final issue, appellant argues that the trial court erred in failing to seal the record in this matter. Appellant indicates that one of the statutes under which he brought his original petition compels a closed hearing:

> (3) All hearings conducted under this subsection shall be closed unless otherwise requested to be open by the applicant.

18 Pa.C.S.A. § 6501(f)(3).

In response, the trial court merely indicates that the other section under which appellant brought his original petition, 18 Pa.C.S.A. § 6111.1, contains no obligation to conduct a closed hearing. The court then cites to

*In re M.B.*, 819 A.2d 59 (Pa.Super. 2003), for the proposition that there is a constitutional presumption of open courts. However, *In re M.B.* also held that:

> [o]nce an interested party, such as the press, seeks access to such proceedings, the party seeking to keep the proceedings closed may rebut the presumption of openness by demonstrating that: (1) the denial of public access serves an important governmental interest, and (2) no less restrictive means to serve that interest exists.

*Id.*, at 63. We find an important government interest in keeping highly stigmatizing mental health records private, and we find no less restrictive means than closing the hearing and sealing the record. Moreover, it is of no moment that Section 6111.1 does not require this as Section 6105 does. Consequently, although we are affirming in all other respects, we will remand this matter for the court below to enter an order sealing the record in this case.

Order affirmed. Case remanded for the entry of an order sealing the record.

Gantman, P.J. joins the Memorandum.

Olson, J. concurs in the result.

J. A11018/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/03/2014